**OUTTEN & GOLDEN LLP**
Jahan C. Sagafi*
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800

Melissa L. Stewart*
Cara B. Chomski*
685 Third Avenue, 25th  Floor
New York, New York 10017
Telephone: (212) 245-1000

*Attorneys for Plaintiffs, the Collective, and the
Proposed Class Members*

* admitted *pro hac vice*

**THE LAW FIRM OF
LOUIS GINSBERG, P.C.**
Louis Ginsberg, Esq.
1613 Northern Boulevard
Roslyn, NY 11576
Telephone: (516) 625-0105

**GLEASON DUNN WALSH &
O'SHEA**
Ronald G. Dunn
40 Beaver Street
Albany, NY 12207
Telephone: (518) 432-7511

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT LAPOINTE, JR., on behalf of himself and all others similarly situated,<br><br>                Plaintiff,<br><br>   v.<br><br>TARGET CORPORATION,<br><br>                Defendant. | Case No. 16 Civ. 216 (GTS)(CFH) |

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>PLAINTIFF'S MOTION TO COMPEL DISCOVERY</u>

# TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................................... 1

II.   BACKGROUND ........................................................................................................... 1

III.  ARGUMENT ................................................................................................................. 2

    A.    Plaintiff Is Entitled To The Class List ............................................................... 2

        1.    Courts Routinely Compel Class Lists in Actions Like This One. ............ 3

        2.    Providing The Class List Is Minimally Burdensome, Involves Minimal Privacy Concerns, And Constitutes Proportionate Discovery. ................. 4

        3.    Target Misconstrues The Applicable Standard And The Allegations in This Case. ................................................................. 5

    B.    Because Certification Issues Are the Appropriate Focus at This Stage, The Proper Scope of Discovery Is Nationwide, Not One Individual Or A Single Location. ........................... 6

    C.    Target Should Describe Its Ex Parte Communications With Class Members To Enable The Court To Confirm Whether Safeguards Are Necessary To Protect Class Members' Rights. ................................................................................................... 8

IV.   CONCLUSION ............................................................................................................ 11

## TABLE OF AUTHORITIES

CASES                                                                                                    PAGE(S)

*Allard v. Post Rd. Entm't*,
   No 11 Civ. 901, 2012 WL 951917 (D. Conn. Mar. 20, 2012) ............................................................. 4

*Belt v. Emcare, Inc.*,
   299 F. Supp. 2d 664 (E.D. Tex. 2003) ...................................................................................... 11

*Billingsley v. Citi Trends, Inc.*,
   560 F. App'x 914 (11th Cir. 2014).............................................................................9-10, 11

*Boice v. M+W U.S., Inc.*,
   130 F. Sup. 3d 677 (N.D.N.Y. 2015) .................................................................3, 4, 5-6, 7

*Chen-Oster v. Goldman, Sachs & Co.*,
   285 F.R.D. 294 (S.D.N.Y. 2012)...........................................................................................4, 7

*EEOC v. Morgan Stanley & Co., Inc.*,
   206 F. Supp. 2d 559 (S.D.N.Y. 2002) ....................................................................................10-11

*Fei v. WestLB AG*,
   No. 07 Civ. 8785, 2008 WL 7863592 (S.D.N.Y. Apr. 23, 2008)..............................................3-4, 6

*Glatt v. Fox Searchlight Pictures Inc.*,
   No. 11 Civ. 6784, 2012 WL 2108220 (S.D.N.Y. June 11, 2012)........................................ 3, 4

*Guan Ming Lin v. Benihana Nat'l Corp.*,
   755 F. Supp. 2d 504 (S.D.N.Y. 2010) ................................................................................... 7

*Kleiner v. First Nat. Bank of Atlanta*,
   751 F.2d 1193 (11th Cir. 1985) ............................................................................................ 9

*Longcrier v. HL-A Co.*,
   595 F. Supp. 2d 1218 (S.D. Ala. 2008) ................................................................................ 10

*Mevorah v. Wells Fargo Home Mortg., Inc.*,
   No. 05 Civ. 1175, 2005 WL 4813532 (N.D. Cal. Nov. 17, 2005)........................................ 11

*Ruiz v. Citibank, N.A.*,
   No. 10 Civ. 5950, 2011 WL 43509 (S.D.N.Y. Jan. 4, 2011) ............................................... 3

*Scott v. Chipotle Mexican Grill, Inc.*,
   No. 12 Civ. 8333, 2014 WL 4852063 (S.D.N.Y. Sept. 29, 2014)........................................ 11

*Strauch v. Computer Scis. Corp.*,
   No. 14 Civ. 956, 2015 WL 75884 (D. Conn. Jan. 6, 2015)........................................... 3, 4, 5

*Stroud v. Target Corp.*,
   No. 10 Civ. 1583 (D. Minn.) ............................................................................................... 10

*Urtubia v. B.A. Victory Corp.*,
    857 F. Supp. 2d 476 (S.D.N.Y. 2012) .................................................................... 9

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
    527 F. Supp. 2d 1053 (N.D. Cal. 2007) .................................................................. 9

*Whitehorn v. Wolfgang's Steakhouse, Inc.*,
    No. 09 Civ. 1148, 2010 WL 2362981 (S.D.N.Y. June 14, 2010) ........................... 3

*Wright v. Adventures Rolling Cross Country, Inc.*,
    No. 12 Civ. 982, 2012 WL 2239797 (N.D. Cal. June 15, 2012) ........................... 11

*Youngblood v. Family Dollar Stores, Inc.*,
    Nos. 09 Civ. 3176, 10 Civ. 7580, 2011 WL 1742109 (S.D.N.Y. Jan. 5, 2011) ........................... 3, 4, 5

*Zaniewski v. PRRC Inc.*,
    No. 11 Civ. 1535, 2012 WL 996703 (D. Conn. Mar. 22, 2012) ............................. 3

**STATUTES**

Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ......................................................... *passim*

New York Labor Law §§ 190 *et seq.* ...................................................................................... 2

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ..................................................................................................... 2, 3, 5, 8

Fed. R. Civ. P. 26(b)(1) ...................................................................................................... 5

## I.      INTRODUCTION

Plaintiff respectfully requests that the Court order Target to (1) produce contact information for all potential class members nationwide (the "Class List"), to facilitate Plaintiff's efforts to collect evidence for his upcoming FLSA certification motion and put the parties on more equal footing in light of Target's ongoing use of the Class List in preparation for its opposition, (2) produce electronically stored information ("ESI") applicable to the proposed FLSA nationwide collective and Fed. R. Civ. P. 23 New York class ("Rule 23 Class") (as opposed to limiting discovery to the individual Plaintiff and his worksite), to ensure that the Court's decision on certification questions is based on an adequate record, and (3) provide information about its communications with class members, to help ensure that proper safeguards are in place to prevent class members being taken advantage of, misled, or coerced into acting against their interests.

The first two items – the Class List and classwide scope – are two of the cornerstones of pre-certification discovery that parties engage in at the beginning of litigation in proposed class and collective actions like this one.  The third item – Target's *ex parte* communications with class members – is a matter that comes up when defendants engage in campaigns to collect evidence from class members without confirming that they are abiding by the requisite protections to ensure that class members are not misled, confused, or coerced into unwittingly helping their opponent defeat their claims.

## II.      BACKGROUND

Plaintiff Robert LaPointe, Jr., who worked for Target as a Group Leader and Group Leader Trainee, brings this action on behalf of all such workers ("Class Members"),[1] alleging

---

[1]      For ease of reference, Plaintiff refers to all potential members of the nationwide FLSA collective and the New York class as "Class Members."

that Target misclassified them as exempt from the overtime requirements of the New York Labor Law §§ 190 *et al.* ("NYLL"), and the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA").  *See* ECF No. 35 ("First Amended Complaint" or "FAC") ¶¶ 7, 41-52.  The parties have exchanged written discovery and Target deposed Mr. LaPointe for more than seven hours.  Declaration of Cara B. Chomski ("Chomski Decl.") ¶¶ 5-6.  The parties engaged in extensive meet and confer discussions regarding the issues presented in this motion, as well as other issues, from May 2016 to the present.  *Id.* ¶ 4.

On August 16, 2016, the Court held a telephonic conference to discuss discovery disputes.  The Court ordered the parties to file motions raising their respective concerns by August 29, 2016, with opposition briefs due September 22 and reply briefs due September 29.  ECF No. 51.

## III.    ARGUMENT

### A.    Plaintiff Is Entitled To The Class List.

Plaintiff requests production of the Class List, comprised of Class Members' names, addresses, phone numbers, email addresses, dates and locations of employment, job titles, and Social Security numbers (to facilitate searches for updated addresses where Target's contact information is stale and out-of-date).  This list includes approximately 1,829 people.  *See* Chomski Decl., Ex. A (Aug. 9 Email).[2]  Plaintiff understands that Target has contacted many of these people in 2016 in an effort to secure declaration testimony from them to prepare its opposition to Plaintiff's upcoming FLSA certification and Rule 23 motions.  Plaintiff requests that the Court require Target to produce the Class List to enable Plaintiff to conduct his own investigation and gather evidence from Class Members in his effort to help them assert their overtime pay claims.

---

[2]     Unless otherwise noted, all exhibits referenced herein are attached to the Chomski Decl.

### 1.      Courts Routinely Compel Class Lists in Actions Like This One.

Courts in the Second Circuit routinely compel defendants to produce class list information prior to collective and class certification.  *See Boice v. M+W U.S., Inc.*, 130 F. Sup. 3d 677, 698 (N.D.N.Y. 2015) (Suddaby, J., adopting report and recommendation of Hummel, C.) ("pre-certification discovery is appropriate to enable the plaintiff to define the class and identify similarly situated employees") (quotation and alterations omitted); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, No. 09 Civ. 1148, 2010 WL 2362981, at *2 (S.D.N.Y. June 14, 2010) ("the weight of authority in this district counsels in favor of allowing [disclosure of class contact information and other information] in FLSA cases"); *Strauch v. Computer Scis. Corp.*, No. 14 Civ. 956, 2015 WL 75884, at *3 (D. Conn. Jan. 6, 2015) ("there is an abundance of case law. . . over the last nine years, which has 'routinely allow[ed] plaintiffs to discover identifying information regarding potential class members so that they may be told about the pending FLSA action'" (citation omitted)); *Zaniewski v. PRRC Inc.*, No. 11 Civ. 1535, 2012 WL 996703, at *1 (D. Conn. Mar. 22, 2012) ("[p]re-certification discovery of potential class lists is favored by most cases considering the question, within the contexts of Rule 23, FLSA, or both"); *Glatt v. Fox Searchlight Pictures Inc.*, No. 11 Civ. 6784, 2012 WL 2108220, at *2-3 (S.D.N.Y. June 11, 2012) (requiring pre-certification production of class list because putative class members "likely . . . possess relevant information regarding . . . duties, the compensation policies that applied to them, and the hours they worked"); *Youngblood v. Family Dollar Stores, Inc.*, Nos. 09 Civ. 3176, 10 Civ. 7580, 2011 WL 1742109, at *5 (S.D.N.Y. Jan. 5, 2011) (granting motion to compel class list); *Ruiz v. Citibank, N.A.*, No. 10 Civ. 5950, 2011 WL 43509, at *1 (S.D.N.Y. Jan. 4, 2011) (requiring pre-certification production of class list for nationwide collective); *Fei v. WestLB AG*, No. 07 Civ. 8785, 2008 WL 7863592, at *2 (S.D.N.Y. Apr. 23, 2008) ("conditional certification is not a prerequisite to the turnover of information concerning the identity of

3

potential class members" (collecting cases)).

> **2.  Providing The Class List Is Minimally Burdensome, Involves Minimal Privacy Concerns, And Constitutes Proportionate Discovery.**

Target cannot show the Class List data is burdensome or costly to produce.  In fact, Target has these records in its own computer systems – and is actively using them to collect evidence about the Class Members in support of its positions in this litigation.  *See Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 302 (S.D.N.Y. 2012) (compelling production of class list where employer "has not demonstrated that the cost and burden associated with extracting ESI from any of the relevant databases is a function of the means of storage").

Class List information is invaluable to Plaintiff because the employees themselves are a unique source of information about class members' actual job duties.  *See, e.g.*, *Glatt*, 2012 WL 2108220, at *2 (compelling production of class list where "[class members] are likely to possess relevant information regarding . . . duties, the compensation policies that applied to them, and the hours they worked.").

Plaintiff's compelling need for Class List information outweighs the "minimal" privacy concerns associated with production of the list, because class members have unique information about their duties and the terms and conditions of their employment.  *Boice*, 130 F. Supp. 3d at 699; *Allard v. Post Rd. Entm't*, No 11 Civ. 901, 2012 WL 951917, at *2 (D. Conn. Mar. 20, 2012) ("discovery of [class list] is not extraordinarily invasive of the employees' privacy and any such burden does not outweigh the likely benefit"); *Youngblood*, 2011 WL 1742109, at *4 ("disclosure of [class list] 'does not involve revelation of personal secrets, intimate activities, or similar private information, which have been found to be serious invasions of privacy'"); *Strauch,* 2015 WL 75884, at *3 ("the discovery of names, addresses and e-mail addresses was not extraordinarily invasive of the employees' privacy.") (alterations and internal quotation

marks omitted).

Any privacy concern is also minimal because class lists are typically used by plaintiffs and their attorneys to engage in limited, targeted outreach to class members to educate them about the existing litigation, the stakes, the consequences of speaking with defense counsel and plaintiffs' counsel, and the importance of preserving their own evidence.  Class members are generally thankful for this information.  On the rare occasions when a class member wishes not to be contacted further, counsel honors that request, and ceases all contact with that class member.

The size of the requested Class List is reasonable and proportionate to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1).  Here, the Class List consists of approximately 1,829 people nationwide.  Courts in the Second Circuit routinely order defendants to produce class lists of this size in wage and hour litigation, even before any FLSA collective or Rule 23 class is certified.  *See, e.g.*, *Youngblood*, 2011 WL 1742109, at *1-5 (ordering pre-certification production of 1,500 person class list); *Strauch*, 2015 WL 75884, at *4-5 (ordering pre-certification production of job titles and location information for 3,000 putative class members).

### 3.   Target Misconstrues The Applicable Standard And The Allegations in This Case.

Target argues it need not produce the Class List because Plaintiff has not made out a "*prima facie*" case of classwide harm.  To the contrary, Plaintiff has made detailed allegations – which Target does not deny – that Target categorically classifies all Class Members as exempt from the FLSA and NYLL's overtime pay requirements, nationwide.  *See* ECF No. 35 (FAC); ECF No. 9 (Answer) ¶ 2.

Courts routinely emphasize that pre-certification discovery is often necessary to "enable the plaintiff to make a fuller showing" that certification is appropriate.  *Boice*, 130 F. Supp. 3d at

698 (quoting *Whitehorn*, 2010 WL 2362981, at *2).  In order to decide whether to certify a class

or a collective, the Court will need the benefit of argument from both parties, based on evidence

specific to the case, regarding what duties class members perform, what constraints Target places

on their authority, what standardized systems Target uses to define Class Members' duties, and

how those systems and policies work in practice.  The Class List is a key tool to probe such

questions, and thus, is an appropriate subject of pre-certification discovery.

Target argues that Plaintiff has spoken with some Class Members, and this might justify

an exception to the normal rule that the full Class List is produced.  ECF No. 50 at 3.  It is hard

to imagine how contact with some individuals is an adequate substitute for a level playing field

where both parties can contact any Class Member they wish.  In fact, the court in *Fei*, 2008 WL

7863592, at *3, rejected this argument and granted a motion to compel the class list even though

the employee gathered some information on his own, because "the company has not shown that

[plaintiff] has adequate contact information for every [class member]."

## B. Because Certification Issues Are the Appropriate Focus at This Stage, The Proper Scope of Discovery Is Nationwide, Not One Individual Or A Single Location.

Target also errs in attempting to limit discovery to a single individual, location, or state.

Specifically, Target refuses to provide ESI, certain other documents and data,[3] and email

searches for custodians that touch on any Class Members other than the named plaintiff or those

who "directly interacted" with him.  Ex. B (Aug. 3 Letter) at 2 (asserting that Target "should

only be required to search custodians at the Wilton DC who arguably had some connection with

plaintiff").  Target argues that a larger scope is inappropriate because it "would not yield

---

[3]      Although some meet and confer efforts are ongoing, Target has refused to provide
classwide information regarding compensation, hours worked, and transfer data, documents
describing Target's corporate structure for all Distribution Centers, and studies it performed to
determine whether its Group Leaders are properly classified as exempt from overtime under
federal and state law.

documents with any bearing on plaintiff's individual claims." *Id*.

Courts in this Circuit and nationwide do not condone the extreme curtailing of pre-discovery that Target advocates.  As discussed above, it is well-settled that a proposed class action requires class discovery in order to assist the Court in determining whether a class should be certified.  Because this is a class action, Plaintiff is "litigating more than [his] individual claim[]" – he seeks "to represent a class that covers all divisions in which the challenged . . . policies are utilized and to assert claims for the entire class period." *Chen-Oster*, 285 F.R.D. at 306-07 (compelling production of classwide discovery in an employment class action); *Boice*, 130 F. Supp. 3d at 698 (describing importance of pre-certification discovery as to the proposed class).  Target may believe that it can defeat Plaintiff's certification motion, but that is no basis for depriving Plaintiff of an opportunity to litigate the certification question in the first place.

Similarly, even though the standard for conditionally certifying a FLSA collective is relatively modest, "the evidence must be sufficient to demonstrate that current and potential plaintiffs together were victims of a common policy or plan that violated the law." *Guan Ming Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504, 509 (S.D.N.Y. 2010) (internal alterations and quotation omitted).  "Given the Supreme Court's direction that the broad remedial goal of the FLSA should be enforced to the full extent of its terms, pre-certification discovery is appropriate to enable the plaintiff to define the class and identify similarly-situated employees." *Boice*, 130 F. Sup. 3d at 698 (quoting *Whitehorn*, 2010 WL 2362981, at *2) (alterations and quotations omitted).

The Court cannot decide whether certification of a nationwide FLSA collective or a New York class is appropriate without adequate facts.  Although Plaintiff's FLSA certification burden is low, it is not non-existent.  Basic, reasonable discovery about Class Members' job duties and

the policies governing their work is the kind of evidence that parties typically produce before certification.  The same should be true here.

### C.   Target Should Describe Its Ex Parte Communications With Class Members To Enable The Court To Confirm Whether Safeguards Are Necessary To Protect Class Members' Rights.

During July 2016, Plaintiff began to suspect that Target is engaging in a campaign to interview Class Members about their claims in the litigation.  While Plaintiff does not dispute that Target is entitled to gather facts to support its defense by speaking to class members,[4] Plaintiff has concerns about this behavior because *ex parte* communications may run afoul of class members' rights, contrary to principles derived from Rule 23, and the Court's general case management authority.  Because of these concerns, Plaintiff requests that the Court order Target to: (a) disclose details about its communications with Class Members during the pendency of this lawsuit, including documents provided to Class Members and scripts used in speaking with Class Members; and (b) cease further communications with Class Members about the litigation until the Court has decided whether any safeguards are necessary in future communications by Target with Class Members.

It is easy to understand how a defendant employer's position of power over current employees may lead employees to believe it is in their interests to participate in their employer's defense efforts.  Employees may not understand that litigation on their behalf is ongoing, and that helping the employer will likely undermine their ability to recover overtime or become overtime-eligible in the future.  Courts have recognized that the risk of harm from *ex parte* communications is particularly acute when the defendant and class member have an ongoing employment relationship, since the employee is subject to the employer's control in everyday

---

[4]      Plaintiff does not seek to discover Target's draft affidavits or other protected work product.

matters, and will likely feel uncomfortable challenging the employer's wishes.  *See, e.g.*, *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1202 (11th Cir. 1985) ("A unilateral communications scheme . . . is rife with potential for coercion.  If the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive." (internal quotation and alteration omitted)); *Urtubia v.* , *v. B.A. Victory Corp.*, 857 F. Supp. 2d 857, 485 485 (S.D.N.Y. 2012) ("Defendants' workplace relationship with current employees, and their knowledge of sensitive information about current and former employees, put them in a position to exercise strong coercion in connection with potential class members' decisions regarding participation in this litigation."); *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1060 (N.D. Cal. 2007) (noting the "heightened potential for coercion…where the absent class member and the defendant are involved in an ongoing business relationship, such as employer-employee," and that "any [such] communications are more likely to be coercive.") (citing *Mevorah v. Wells Fargo Home Mortg., Inc.*, No. 05 Civ. 1175, 2005 WL 4813532, at *3 (N.D. Cal. Nov. 17, 2005)).

Because of the heightened risk of class member confusion and coercion in these circumstances, courts are watchful and skeptical of employers' pre-certification *ex parte* communications with class members and routinely oversee such communications to protect against the erosion of individuals' rights.  *See Urtubia at v. B.A. Victory Corp.*, 857 F. Supp. 2d 476, ("These circumstances [involving] . . . Defendants' workplace relationship with current employees . . . are sufficiently fraught with potential for abuse to warrant a carefully tailored, limited restriction on Defendants' right to communicate directly with current and former employees who are potential class members regarding this litigation and its subject matter"); *see also Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914, 921 (11th Cir. 2014) ("[P]re-certification,

*ex parte* communication with putative FLSA collective members about the case has an inherent risk of prejudice and opportunities for impropriety.").

Plaintiff is particularly concerned about two aspects of Target's *ex parte* communications in this case, given its prior history of communicating with class members (*e.g.*, in the *Stroud* litigation where Target was represented by the same attorneys).[5]  First, according to filings in *Stroud*, Target interviewed class members at job sites during work hours, possibly with managers present.  This practice of calling "workers into a one-on-one meeting during work hours with its attorney(s), creat[es] an inherently coercive and intimidating environment for interviews." *Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1229 (S.D. Ala. 2008).

Second, Target's script prefacing the interviews it conducted in *Stroud*, Chomski Decl. Ex. D, is inadequate to convey in plain language the costs and benefits of participation.  Courts often require defendants to describe the litigation in real terms (*e.g.*, by including the name of the case and a summary of the claims), the class member's position in it (*e.g.*, that they individually may recover money or win reclassification to hourly status to be paid overtime in the future), the consequences of participation (*e.g.*, that the defendant is an adversary and that assisting the adversary can weaken their position in the litigation), and the right not to participate (*e.g.*, that participation is voluntary, and that nonparticipation will not be punished, nor will participation be rewarded).  *See, e.g.*, *EEOC v. Morgan Stanley & Co., Inc.*, 206 F. Supp. 2d 559, 563 (S.D.N.Y. 2002) (requiring court-approved notice to interview subjects informing them about the nature of the claims, that they have a private right of action, that there is a pending lawsuit which

---

[5]      In *Stroud v. Target Corp.*, No. 10 Civ. 1583 (D. Minn.), Target submitted 295 class member declarations in support of its opposition to the FLSA certification motion.  *See* Chomski Decl. Ex. C (July 15, 2011 Declaration of Joseph G. Schmitt) ¶ 8.

that they may be eligible to join, and that retaliation is unlawful).[6]

At this point, while there are some indications that Target may have crossed the line into improper *ex parte* communications, Plaintiff cannot know with certainty because Target has refused to describe its actions.  Depending on the nature of Target's communications, this situation may necessitate judicial intervention.  Plaintiff is not requesting the Court order Defendant terminate contact with Class Members *in perpetuum*.  Rather, Plaintiff simply requests an order that Defendant cease communication *until after* it discloses details about its communications with Class Members during the pendency of this lawsuit, and the Court has had the opportunity to decide what safeguards, if any, are required in future communications by Target with Class Members.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court order Target to (1) produce the Class List in electronic, data-manipulable form (such as Excel) within 5 days of its order; (2) produce ESI and other discovery (including email searches for custodians other than

---

[6]     District courts in this Circuit and throughout the country routinely limit employers' communications with potential class and collective members to prevent or remedy coercive, misleading, and improper communications.  *See, e.g.*, *Scott v. Chipotle Mexican Grill, Inc.*, No. 12 Civ. 8333, 2014 WL 4852063, at *2 (S.D.N.Y. Sept. 29, 2014) ("When improper *ex parte* communications occur in a class action, a court may take various forms of curative action, including ordering 'exclusion of information gained in violation of the attorney-client relationship'") (quoting Manual for Complex Litig. (Fourth) § 21.33); *Billingsley*, 560 F. App'x at 922 (district courts "routinely . . . exercise discretion to correct the effects of pre-certification communications with potential FLSA collective action members after misleading, coercive, or improper communications are made"); *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 670 (E.D. Tex. 2003) (enjoining "[d]efendants from further unauthorized communications with absent class members" and imposing sanctions); *Wright v. Adventures Rolling Cross Country, Inc.*, No. 12 Civ. 982, 2012 WL 2239797, at *5-6 (N.D. Cal. June 15, 2012) (barring Defendant employer from directly communicating with potential class members except "on purely business-related matters" and restricting counsels' communications with potential class members); *Mevorah v. Wells Fargo Home Mortg., Inc.*, No. 05 Civ. 1175, 2005 WL 4813532, at *5 (N.D. Cal. Nov. 17, 2005) (restricting parties from engaging in pre-certification communications with potential class members unless pre-approved by the court where "defendant's pre-certification communications with potential class members were misleading and improper").

those who directly interacted with the named plaintiff) regarding the full scope of the proposed FLSA collective and NYLL class; and (3) disclose the relevant details about its communications with Class Members during the pendency of this lawsuit, including documents provided to Class Members and scripts used in speaking with Class Members, and cease further communications with Class Members about the litigation until the Court has ruled on the appropriate safeguards required in future communications by Target with Class Members, if any.

Dated:       August 29, 2016
             San Francisco, California

                          Respectfully submitted,

             By:     /s/ Jahan C. Sagafi

                          **OUTTEN & GOLDEN LLP**
                          Jahan C. Sagafi*
                          One Embarcadero Center, 38th Floor
                          San Francisco, CA 94111
                          Telephone: (415) 638-8800

                          Melissa L. Stewart*
                          Cara B. Chomski*
                          685 Third Avenue, 25th Floor
                          New York, NY 10017
                          Telephone: (212) 245-1000

                          **LAW FIRM OF LOUIS GINSBERG, P.C.**
                          Louis Ginsberg
                          1613 Northern Boulevard
                          Roslyn, NY 11576
                          Telephone: (516) 625-0105

                          **GLEASON DUNN WALSH & O'SHEA**
                          Ronald G. Dunn
                          40 Beaver Street
                          Albany, NY 12207
                          Telephone: (518) 432-7511

                          *Attorneys for Plaintiffs, the Collective, and the
                          Proposed Class Members*

*admitted *pro hac vice*

12