**OUTTEN & GOLDEN LLP**
Jahan C. Sagafi*
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800

Melissa L. Stewart*
Cara B. Chomski*
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000

*Attorneys for Plaintiff, the Collective, and the
Proposed Class Members*

* admitted *pro hac vice*

**THE LAW FIRM OF
LOUIS GINSBERG, P.C.**
Louis Ginsberg, Esq.
1613 Northern Boulevard
Roslyn, NY 11576
Telephone: (516) 625-0105

**GLEASON DUNN WALSH &
O'SHEA**
Ronald G. Dunn
40 Beaver Street
Albany, NY 12207
Telephone: (518) 432-7511

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT LAPOINTE, JR., on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br>      v.<br><br>TARGET CORPORATION,<br><br>                    Defendant. | Case No. 16 Civ. 216 (GTS)(CFH) |

## PLAINTIFF'S OPPOSITION TO DEFENDANT TARGET CORPORATION'S MOTION TO COMPEL DISCOVERY

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

II.  BACKGROUND ...................................................................................................1

III.  ARGUMENT.........................................................................................................2

    A.  Plaintiff's Communications Are Privileged.............................................2

        i.  Common Interest Privilege ..........................................................2

        ii.  Plaintiff's Communications Are Protected By the National Labor
            Relations Act .................................................................................4

    B.  Target Fails To Show Good Cause To Extend Plaintiff's Deposition....................6

        i.  Target Wasted Time Through Repetitive And Irrelevant Questioning .......7

        ii.  Plaintiff's Deposition Did Not Involve Newly-Discovered Evidence or
            Unexpected Claims........................................................................9

        iii.  Target's Cited Cases Are Inapposite .........................................10

    C.  Additional Discovery Regarding Plaintiff's Prior, Subsequent, and Prospective
        Employment Is Irrelevant and Harassing .............................................11

IV.  CONCLUSION....................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Bender v. Del Valle*,
  No. 05 Civ. 6459, 2007 WL 1827839 .........................................................................7, 9, 10

*Brady v. National Football League*,
  644 F.3d 661 (8th Cir. 2011) ...........................................................................................4

*Cendant Corp. v. Shelton*,
  No. 06 Civ. 00854, 2007 WL 2640701 (D. Conn. Aug. 24, 2007) ...........................2

*Children First Found., Inc. v. Martinez*,
  No. CIV. 04 Civ. 0927, 2007 WL 4344915 (N.D.N.Y. Dec. 10, 2007)....................3

*Corrigan v. United States*,
  68 Fed. Cl. 589 (2005) ............................................................................................ 13-14

*E.E.O.C. v. Princeton Healthcare Sys.*,
  No. 10 Civ. 4126, 2012 WL 1623870 (D.N.J. May 9, 2012) ..................................13

*Folger v. Medicalodges, Inc.*,
  No. 13 Civ. 1203, 2013 WL 6244155 (D. Kan. Dec. 3, 2013)................................11

*George v. City of Buffalo*,
  789 F. Supp. 2d 417 (W.D.N.Y. 2011) ...................................................................10

*Goulet v. Mederi Caretenders VS of SW FL, LLC*
  No. 10 Civ. 215, 2011 WL 652851 (M.D. Fla. Feb. 14, 2011) ..............................14

*Havey v. Homebound Mortg., Inc.*,
  No. 03 Civ. 313, 2005 WL 1719061 (D. Vt. July 21, 2005) ...................................14

*Hendricks v. Total Quality Logistics, LLC*,
  275 F.R.D. 251 (S.D. Ohio 2011)............................................................................12

*Henry v. Morgan's Hotel Grp., Inc.*,
  No. 15 Civ. 1789, 2016 WL 303114 (S.D.N.Y. Jan. 25, 2016)...............................14

*Hobson v. Commc'ns Unlimited, Inc.*,
  No. 10 Civ. 734, 2011 WL 414948 (N.D. Ga. Feb. 7, 2011) ..................................11

*Holmes v. North Texas Health Care Laundry Coop Ass'n*,
  No. 15 Civ. 2117, 2016 WL 2609995 (N.D. Tex. May 6, 2016) .............................10

*Kelly v. A1 Tech.*
  No. 09 Civ. 962, 2010 WL 1541585 (S.D.N.Y. Apr. 12, 2010) .............................13

*Lugosch v. Congel*,
  219 F.R.D. 220 (N.D.N.Y. 2003) ...................................................................2, 3, 4

*Margel v. E.G.L. Gem Lab Ltd.*,
  No 04 Civ. 1514, 2008 WL 2224288 (S.D.N.Y. May 29, 2008) ...................................... 6-7, 9

*Martinez v. Cornell Correction of Texas, Inc.*,
  229 F.R.D. 194 (D.N.M. 2005)...........................................................................................11

*Paananen v. Cellco P'ship*,
  No. 08 Civ 1042, 2009 WL 2057048 (W.D. Wash. July 15, 2009) ..................................14-15

*Perry v. Best Lock Corp.*,
  No. 98 Civ. 0936, 1999 WL 33494858 (S.D. Ind. Jan. 21, 1999)...........................................13

*Piscone v. Ernst & Young, L.L.P.*
  171 F.3d 527 (7th Cir. 1999) .................................................................................................14

*Prentice v. Fund for Pub. Interest Research Inc.*,
  No. 06 Civ 7776, 2007 WL 2504818 (N.D. Cal. Aug. 31, 2007)............................................12

*Rahman v. Smith and Wollensky Rest. Grp., Inc.*,
  No 06 Civ. 6198, 2009 WL 72441 (S.D.N.Y. Jan. 7, 2009)......................................................10

*Stroud v. Target Corp.*,
  No. 10 Civ. 01583 (D. Minn. 2010) ........................................................................................10

*TIFD III-E, Inc. v. United States*,
  223 F.R.D. 47 (D. Conn. 2004) ................................................................................................2

*Umbach v. Carrington Investment Partners (US), LLP*,
  No. 08 Civ. 484, 2012 WL 4854657 (D. Conn. Oct. 11, 2012) ..............................................10

*Vuona v. Merrill Lynch & Co., Inc.*,
  No. 10 Civ. 6529, 2011 WL 5553709 (S.D.N.Y. Nov. 15, 2011) ......................................12, 14

*Warnke v. CVS Corp.*,
  265 F.R.D. 64 (E.D.N.Y.2010)................................................................................................12

*Weber v. FujiFilm Medical Systems U.S.A. Inc.*,
  No. 10 Civ. 401, 2011 WL 677282 (D. Conn. Jan. 24, 2011).................................................3

*Williams v. U.S. Envtl. Servs., LLC*,
  No. 15 Civ. 168, 2016 WL 684607 (M.D. La. Feb. 18, 2016) ...............................................12

**NLRB Cases**

*In Re Guess?, Inc.*,
  339 NLRB 432 (2003) ..............................................................................................................5

*Leviton Mfg. Co., Inc. v. NLRB*,
  486 F.2d 686 (1st Cir. 1973)....................................................................................................4

*NLRB v. J. Coty Messenger Serv., Inc.,*
    763 F.2d 92 (2d Cir. 1985) ........................................................................5

*NLRB v. Jamaica Towing, Inc.,*
    632 F.2d 208 (2d Cir. 1980) ......................................................................5

*Saigon Gourmet Restaurant,*
    353 NLRB No. 110, 2009 WL 616703 (NLRB Mar. 9, 2009)...................5

*Trinity Trucking & Materials Corp.,*
    221 NLRB No. 64, 1975 WL 6428 (NLRB Nov. 5, 1975) ........................5

**Statutes**

    29 U.S.C. § 158(a) ....................................................................................5

## I. INTRODUCTION

Plaintiff respectfully requests that the Court deny Target's motion to compel disclosure of his privileged communications with class members, require that he appear for a second full day of deposition, and compel additional information regarding his prior, subsequent, and potential employers. Target's Motion to Compel Discovery should be denied for three reasons. First, Plaintiff's communications with Michael Massarone and putative class members are protected from disclosure by the common interest privilege and constitute protected concerted activity under the National Labor Relations Act. Second, Target wasted its deposition time through its irrelevant and repetitive questioning. Finally, information about Mr. LaPointe's prior and subsequent employment and job search is irrelevant to his job duties as a Group Leader at Target, potentially jeopardizes his current employment, and is harassing.

The information that Target seeks in its Motion to Compel is unnecessary and duplicative. Plaintiff has submitted written discovery and given deposition testimony listing the names of the individuals he communicated with regarding this lawsuit. Similarly, Plaintiff fully answered all of the questions posed to him during his deposition. Finally, Plaintiff produced his resume to Target and testified to the employment positions that he has held since 1995 during his deposition.

## II. BACKGROUND

Plaintiff Robert LaPointe, Jr., brings this action on behalf of all Warehousing, Inbound and Outbound Group Leaders and Warehousing, Inbound, Outbound and MBP Group Leader Trainees employed in Target warehouses nationwide ("Class Members")[1] alleging that Target misclassified Class Members as exempt from the overtime requirements of the Fair Labor

---

[1] For ease of reference, "Class Members" includes all potential members of the nationwide FLSA collective and the New York class.

Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and New York Labor Law §§ 190 *et al.* ("NYLL"). *See* ECF No. 35 ("First Amended Complaint" or "FAC") ¶¶ 7-9, 41-52.

The parties have exchanged written discovery, and Target deposed Plaintiff LaPointe for over seven hours on the record on June 2, 2016. Ginsberg Decl. ¶ 2 & Ex. A ("Deposition Tr.") at 6:6-7, 434:22. Since the June 2, 2016 deposition, the parties have exchanged written correspondence explaining their respective positions and have engaged in extensive meet and confer discussions. Ginsberg Decl. ¶ 10. Despite efforts by both sides, the parties were unable to reach agreement. Ginsberg Decl. ¶ 11.

## III.  ARGUMENT

### A.  Plaintiff's Communications Are Privileged.

#### i.  Common Interest Privilege.

Target argues that Plaintiff's communications with Michael Massarone and class members are discoverable. To the contrary, the common interest privilege shields these communications because all parties to those communications shared a common legal interest.

The common interest doctrine is an exception to the rule that disclosing confidential communications to a third party waives privilege. *TIFD III-E, Inc. v. United States*, 223 F.R.D. 47, 50 (D. Conn. 2004). It extends the privilege to "communications revealed to a third party who shares a common legal goal with the party in possession of the original privilege." *Id.* "[T]he common interest arrangement extends the joint litigant premise further and permits parties to share information outside of its normal legal advice infrastructure even though it may not involve a lawsuit." *Lugosch v. Congel*, 219 F.R.D. 220, 236 n.10 (N.D.N.Y. 2003).

Parties that share a common interest do not need to be actively involved in the same matter; it is sufficient that they "demonstrate[] cooperation in formulating a common legal strategy." *Cendant Corp. v. Shelton*, No. 06 Civ. 00854, 2007 WL 2640701, at *2 (D. Conn.

Aug. 24, 2007). An attorney does not need to be present for the common interest privilege to apply, so long as the parties to the communications share a common legal interest. *Weber v. FujiFilm Medical Systems U.S.A. Inc.,* No. 10 Civ. 401, 2011 WL 677282, at *2-3 (D. Conn. Jan. 24, 2011) ("communications relay legal advice or gather information related to legal advice among individuals with a 'need to know'… are therefore privileged under the common interest rule"). The common interest privilege does not require a written agreement. *See Children First Found., Inc. v. Martinez,* No. CIV. 04 Civ. 0927, 2007 WL 4344915, at *14 (N.D.N.Y. Dec. 10, 2007) ("there must exist an agreement, though not necessarily in writing…"); *Lugosch,* 219 F.R.D. at 237 (same).

Plaintiff's communications with Michael Massarone, a former Target Group leader, are privileged because these communications involved a common enterprise towards a common legal strategy. At the time of these communications discussing legal strategy, Mr. Massarone was represented by Louis Ginsberg Law Offices. Ginsberg Decl. ¶ 5. Mr. LaPointe was subsequently represented by Louis Ginsberg Law Offices. Ginsberg Decl. ¶ 7. During the communications, Mr. LaPointe began consulting with Louis Ginsberg Law Offices. Ginsberg Decl. ¶ 7. Whether or not Mr. Massarone later released claims against Target is irrelevant to whether Massarone and LaPointe cooperated to form a common legal strategy and shared the advice of counsel. These communications are clearly protected by the common interest privilege and need not be disclosed to Defendant.

Plaintiff's communications with putative class members are also privileged. "The intra-group sharing of communications, documents, and advice is protected [by the common interest privilege]. If there exists a community of legal interests, and the parties find there is some benefit to collectively receive legal advice and strategy, these parties will commingle information and

advice and consort to draft a legal stratagem which satisfies this goal." *Lugosch*, 219 F.R.D. at 236. Here, Plaintiff and putative class members' legal claims rise and fall together as part of a representative action. To pursue that action, Plaintiff communicated with potential witnesses who are putative class members in order to pursue a shared legal strategy. Ginsberg Decl. ¶ 8.

Withholding Plaintiff's actual communications with prospective class members is not prejudicial to Target. During his deposition, Mr. LaPointe identified 9 individuals by name and position title. Ginsberg Decl. ¶ 2, Ex. A ("LaPointe Depo.") at 19:25-20:1, 20:19-20, 23:21, 24:13, 26:14, 27:20, 28:10, 28:20, 29:11-12. Mr. LaPointe's counsel allowed him to reveal the names of any individuals with whom he spoke about the litigation or class members, but directed him not to reveal the content of those communications. *See, e.g.*, LaPointe Depo. 2: 14-18. Similarly, Plaintiff's May 4, 2016 Responses to Defendant Target Corporation's First Set of Interrogatories identified forty-nine current and former employees "who have knowledge of Plaintiff's duties, compensation, hours worked, and Defendant's policies and practices." Ginsberg Decl. ¶ 3, Ex. B at 5-6 (Response to Interrogatory No. 1).

ii.     **Plaintiff's Communications Are Protected By the National Labor Relations Act.**

Despite Target's assertions to the contrary, Plaintiff does not ask the court to "invent" an NLRA privilege. Defs. Mot. to Compel at 15. It is well-established that participating in a lawsuit—particularly a wage and hour class and collective action—constitutes concerted activity that is protected from discovery under the National Labor Relations Act ("NLRA"). "[A] lawsuit filed in good faith by a group of employees to achieve more favorable terms or conditions of employment is 'concerted activity' under § 7 of the National Labor Relations Act." *Brady v. National Football League*, 644 F.3d 661, 673 (8th Cir. 2011); *see also Leviton Mfg. Co., Inc. v. NLRB*, 486 F.2d 686, 689 (1st Cir. 1973) ("[T]he filing of a labor related civil action

by a group of employees is ordinarily a concerted activity protected by § 7, unless the employees acted in bad faith."); *Trinity Trucking & Materials Corp.*, 221 NLRB No. 64, 25–CA–6402, 1975 WL 6428, at *275–76 (NLRB Nov. 5, 1975) ("the filing of a civil action by employees is protected activity unless done with malice or in bad faith.... [B]y joining together to file the lawsuit [the employees] engaged in concerted activity."), *enforced,* 567 F.2d 391 (7th Cir. 1977), *cert. denied* 438 U.S. 914 (1978); *Saigon Gourmet Restaurant*, 353 NLRB No. 110, 2–CA–38252, 2009 WL 616703, at *2 (NLRB Mar. 9, 2009) ("Concertedly asserting a claim for unpaid overtime constitutes protected activity.").

Under Section 8(a) of the National Labor Relations Act, "It shall be an unfair labor practice for an employer…to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [Section 7] of this title." 29 U.S.C. § 158(a). Even where a lawsuit otherwise affords opportunities for discovery, an employer may not interrogate employees about concerted activity protected by Section 7 of the NLRA. *In Re Guess?, Inc.*, 339 NLRB 432, 435 (2003) ("while the [deposition] questioning would definitely reveal the identity of employees who have engaged in activity protected by Section 7 of the Act, its scope was very broad, and would not necessarily lead to information that would be helpful for, or relevant to, the Respondent's workers' compensation defense"), *petition for review dismissed without prejudice* 2003 WL 22705744 (D.C. Cir. 2003); *NLRB v. J. Coty Messenger Serv., Inc.*, 763 F.2d 92, 97-98 (2d Cir. 1985) (coercive interrogation regarding protected activity—there, union membership—"constituted unlawful, coercive questioning"); *NLRB v. Jamaica Towing, Inc.*, 632 F.2d 208, 213 (2d Cir. 1980) ("interrogating employees regarding their union sympathies" is a violation of the NLRA). Although Target correctly notes that *Guess*, *Coty*, and *Jamaica Towing* each involve union members, the central inquiry in each hinges upon whether the employer's

interrogation—or, as here, deposition questions—violated employees' rights to engage in concerted activity under Section 7.

Target misunderstands the "labor relations" privilege asserted during Plaintiff's deposition. Plaintiff does not ask that the Court apply a limited New York state law privilege to a federal case. The "privilege" merely enforces the National Labor Relations Act's prohibition against employers interfering with employees exercising their Section 7 rights. Since participating in a wage and hour lawsuit is well-recognized as protected activity under Section 7, protecting communications made in furtherance of that protected activity from disclosure applies the law in a manner consistent with decades of appellate and administrative precedent.

Here, Plaintiff's communications with Michael Massarone and with putative class members are protected by the National Labor Relations Act. Plaintiff's communications with Michael Massarone regarding a prospective lawsuit against Target are protected because they directly explore initiating legal action against their common employer to enforce their rights under state and federal law. Plaintiff's communications with Michael Massarone and putative class members are similarly protected from discovery because the NLRA prohibits an employer from interrogating employees about their protected activities and compromises potential plaintiffs' confidentiality interests under Section 7.

**B.    Target Fails To Show Good Cause To Extend Plaintiff's Deposition.**

Target cannot show good cause to justify extending Plaintiff's deposition. Under Federal Rule of Civil Procedure 30(d) , "[u]nless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours." If a party seeks a deposition extension, that party "is expected to show good cause to justify such an order." Fed. R. Civ. P. 30(d) Advisory Committee Notes (2000). This good cause determination is fact specific. *Margel v. E.G.L. Gem*

*Lab Ltd.*, No 04 Civ. 1514, 2008 WL 2224288, at *8 (S.D.N.Y. May 29, 2008). The relevant

factors for this good cause determination "would ordinarily include whether the time previously

afforded for the deposition was used efficiently and whether there are additional relevant areas of

inquiry." *Id.*

Here, Target fails to show good cause to force Plaintiff to sit for a second day of

deposition. Target identifies five topics that it was unable to cover during the seven hours

allotted by the Federal Rules. Defs. Mot. to Compel at 8. The breadth of these supposedly-

omitted topics indicates that Target's inability to complete Mr. LaPointe's deposition in one day

is due to its own poor planning. Under the Federal Rules, "Parties are expected to be able to

depose a party in seven hours." *Bender v. Del Valle*, No. 05 Civ. 6459, 2007 WL 1827839, at *3

(S.D.N.Y. June 25, 2007; *see also id.* ("While it is understandable that the Bivens defendants

may wish to inquire as to a variety of other topics, such thorough questioning on all potential

subjects is not envisioned under the rules.").

      i.    **Target Wasted Time Through Repetitive And Irrelevant Questioning.**

The deposition transcript reflects that Target wasted its seven hours of deposition time

through repetitive and irrelevant questions. Ginsberg Decl. ¶ 2 & Ex. A. Throughout the day,

Defendant repeatedly asked Plaintiff the same question, not because Plaintiff did not answer, but

rather because Plaintiff did not give the answer that Defendant sought.

Throughout the deposition, Target asked Mr. LaPointe questions including where he was

born (LaPointe Depo. 61:10-11), the date of his wedding anniversary (*id.* 62:9); and the names

and ages of his children (*id.* 63:11-25). Target also questioned Mr. LaPointe three times about

whether he believed that a statement in his performance review was "honest and sincere" (*id.*

334:1-2; 335:2-7; 335:20-22); five times about whether he agreed that his leadership impacted

his team's performance (*id.* at 335:24-336:5; 336:16-23; 337:9-12; 338:21-339:4; 339:13-16); and eleven times about whether Target followed Mr. LaPointe's recommendations to discipline hourly team members (*id.* at 124:7-8; 124:10-11; 124:17-17; 124:23-125:1; 125:16-19; 126:16-22; 127:10-11; 127:22-25; 128:11-14; 128:24-129:8; 129:20-22). These questions included:

Q. If it occurred, though, answer my question, were there occasions when you made a recommendation either at HR or to a senior group leader that corrective action should be administered to a team member? Did you initiate that recommendation? (*Id.* 124:3-8)

Q. Okay. And were those recommendations followed? (*Id.* 124:10-11)

Q. My question was, were those recommendations followed? Either they were or were not. (*Id.* 124:17-19)

Q. You're not being responsive. You're telling me there's some other process. I'm asking was the recommendation followed or not followed? (*Id.* 124:23-125:1)

Q. I still don't think you're answering my question. You made a recommendation that corrective action be administered. Were there, at least, some occasions when that recommendation was followed? (*Id.* 125:14-19)

Q. Well, I still don't think you answered my question. Were there any occasions where team members in which, based on your observations of their behaviors, you went to either a senior group leader or HR and said, "I think this fellow should be put on corrective action"? (*Id.* 126:16-22)

Q. Okay. And when you did that, were those recommendations followed? (*Id.* 127:10-11)

Q. Well, how often would you say that your recommendation that someone be put on a correction action was not followed? (*Id.* 127:22-24)

Q. You still didn't answer the question. I was asking why a recommendation would not be followed. I asking how often was it that a recommendation would not be followed? (*Id.* 128:11-14)

Q. I'm asking a very straightforward question. You made X number of recommendations. How many of those were followed and how many of those were not followed? (*Id.* 129:4-8)

Q. So, how many times did you make a recommendation for corrective action and that recommendation was not followed? (*Id.* 129:20-22)

To allow Defendant to mismanage its time and then grant it a second day of questioning would effectively eliminate the seven hour rule. *Margel*, 2008 WL 224288, at *8. Target would not need a second day to depose Plaintiff LaPointe if it had not misspent the seven hours allotted under the Federal Rules. *Id.* at *7-8. *Margel* is instructive. In *Margel*, the Southern District of New York denied a motion to compel additional deposition time because of counsel's inefficiency. *Margel*, 2008 WL 2224288, at *7-8. There, counsel "spent an inordinate amount of time exploring how a typical grading transaction was conducted at EGL Belgium…," a topic almost entirely irrelevant to the case. *Id.* at *7. Ultimately, "[c]ounsel elicited an unnecessary amount of detail and could have conducted his examination far more efficiently." *Id.*, *see also Bender*, 2007 WL 1827839, at *3 ("In the context of litigation, these claims and alleged damages are not particularly complex…").

Here, Target wasted deposition time better spent on substantive matters fishing for particular answers and questioning Plaintiff about his marriage, his children, and high school job at a grocery store. Ginsberg Decl. ¶ 2 & (Ex. A at 62:3-64:3, 83:14- 84:7).

### ii.    Plaintiff's Deposition Did Not Involve Newly-Discovered Evidence or Unexpected Claims.

Target argues that Plaintiff's June 1 production of documents contained newly-discovered evidence. With the exception of Plaintiff's scrawled notes calculating production numbers, the June 1 production contained documents such as production charts, emails, and performance reviews that were presumably already in Target's possession. Ginsberg Decl. ¶ 9. As Plaintiff's employer, Target also knew that Plaintiff trained for a new position with the company midway through his employment. Finally, Plaintiff's First Amended Complaint— which Plaintiff first circulated to Target on May 11, 2015—asserts misclassification claims for the entirety of a Group Leader and Group Leader Trainee's employment in that position. FAC

[ECF No. 35]¶ ¶ 7-9.  The "new theory" that Group Leader transfer trainees were also misclassified follows logically from the class definition.

Further, there is no indication that Target was unable to question LaPointe about the "new" documents or topics.  As in *Bender*, "defendants allege various topics that Bender has not testified about, but there is no indication in the record that they attempted to question her about these areas but were prevented."  2007 WL 1827839, at *2.

### iii.    Target's Cited Cases Are Inapposite.

Target's cited cases do not apply to this litigation.  *Rahman* involved a discrimination class action involving a single restaurant where "Mr. Rahman is the defendants' best source of information concerning members of the putative class, the nature of their claims, and the scope of their possible damages." *Rahman v. Smith and Wollensky Rest. Grp., Inc.*, No 06 Civ. 6198, 2009 WL 72441, at *4 (S.D.N.Y. Jan. 7, 2009).  Here, Target has ample information in its possession regarding Class Members' job duties, compensation, and exemption status. Additionally, Target is familiar with the misclassification claims asserted here because Target previously litigated and settled a very similar class action brought by Group Leaders in Minnesota, in which it was represented by the same defense counsel.  *See Stroud v. Target Corp.*, No. 10 Civ. 01583 (D. Minn. 2010).

Target's other cases are similarly inapplicable.  *Umbach* allowed additional deposition time so that defense counsel could ask questions about documents that were produced after the deposition.  *Umbach v. Carrington Investment Partners (US), LLP,* No. 08 Civ. 484, 2012 WL 4854657, at *2 (D. Conn. Oct. 11, 2012).  *George* and *Holmes* each involved late-produced documents that related to the central issues of the case. *George v. City of Buffalo*, 789 F. Supp. 2d 417, 436 (W.D.N.Y. 2011); *Holmes v. North Texas Health Care Laundry Coop Ass'n*, No. 15

Civ. 2117, 2016 WL 2609995, at *4 (N.D. Tex. May 6, 2016). *Martinez* involved newly-discovered evidence and allegations that turned on "the extensive subject matters uniquely within Martinez' knowledge." *See Martinez v. Cornell Correction of Texas, Inc.*, 229 F.R.D. 194, 196-97 (D.N.M. 2005). No such facts exist in this relatively straightforward wage and hour collective action.

C.     **Additional Discovery Regarding Plaintiff's Prior, Subsequent, and Prospective Employment Is Irrelevant and Harassing.**

Target argues that additional information relating to Plaintiff's non-Target employment and job search is highly relevant to whether Target misclassified Class Members as exempt from the overtime requirement of the FLSA and NYLL. Plaintiff has already produced his resume and answered all questions posed to him regarding non-Target employment during his deposition. *See.* Ginsberg Decl. Ex. A at 79:23-80:3; 83:14-84:7; 84:11-23; 96:1-97:1; 100-2-101:6.

Target should not be permitted to discover information relating to Plaintiff's other employers because such information is irrelevant to the issues in this case and serves no purpose other than to harass and embarrass Plaintiff for asserting his rights to be paid fairly. The information that Target seeks from other employers and during Plaintiff's job search is irrelevant to whether Target misclassified Class Members as exempt from the overtime requirements of the FLSA and NYLL. *See Folger v. Medicalodges, Inc.*, No. 13 Civ. 1203, 2013 WL 6244155, at *5 (D. Kan. Dec. 3, 2013) ("[P]laintiff's post-separation employment clearly could not have been a consideration for her proper classification by defendants and is not relevant on its face."); *Hobson v. Commc'ns Unlimited, Inc.*, No. 10 Civ. 734, 2011 WL 414948, at *2 (N.D. Ga. Feb. 7, 2011) ("[T]he Court denies the Defendants' request for the Plaintiff's job applications . . . because it is irrelevant whether the Defendant worked for someone else before or after the Defendants; the inquiry is whether the Plaintiff was properly categorized as an

independent contractor while he was working for the Defendants alone."); *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 254 (S.D. Ohio 2011) ("[P]laintiffs' former job duties and personnel files have little to no bearing on the ultimate legal question of whether plaintiffs were exempt from the FLSA overtime pay requirements while employed by defendant."); *Prentice v. Fund for Pub. Interest Research Inc.*, No. 06 Civ. 7776, 2007 WL 2504818, at *1 (N.D. Cal. Aug. 31, 2007) (denying defendant's motion to compel post-separation employment history because such information was not relevant to whether defendant properly classified plaintiff as exempt).

Individuals have a "legitimate privacy interest in information regarding [their] subsequent employment" because of the possibility for harassment. *Warnke v. CVS Corp.,* 265 F.R.D. 64, 66 (E.D.N.Y.2010). Similarly, Plaintiff's sensitive performance, disciplinary, and compensation information from *previous employers* has no bearing on whether Class Members were exempt from the overtime requirements of the FLSA and NYLL while employed by Target. *See Hendricks*, 275 F.R.D. at 254; *Vuona v. Merrill Lynch & Co., Inc.*, No. 10 Civ. 6529, 2011 WL 5553709, at *8-9 (S.D.N.Y. Nov. 15, 2011) (plaintiffs' prior work histories irrelevant to issue of whether employers decision making was influenced by gender bias); *Williams v. U.S. Envtl. Servs., LLC*, No. 15 Civ. 168, 2016 WL 684607, at *3 (M.D. La. Feb. 18, 2016) ("[I]nformation regarding Plaintiff's past employers, positions, salaries and reasons for leaving is not relevant to any party's claim or defense before the Court.").

The additional discovery sought regarding Plaintiff's prior, subsequent, and prospective employers is irrelevant, harassing, and not proportionate to the needs of a routine wage and hour case. "If filing what is, by all appearances to the court, a fairly routine case alleging individual employment discrimination opens up the prospect of discovery directed at all previous, current,

and prospective employers, there is a serious risk that such discovery can become an instrument for delay or oppression." *Perry v. Best Lock Corp.*, No. 98 Civ. 0936, 1999 WL 33494858, at *2 (S.D. Ind. Jan. 21, 1999) (internal quotation marks omitted); *see also E.E.O.C. v. Princeton Healthcare Sys.*, No. 10 Civ. 4126, 2012 WL 1623870, at *21 (D.N.J. May 9, 2012) ("[T]he concern that employers might as a routine matter undertake extensive discovery into an employee's background or performance on the job to resist claims ... is not an insubstantial one.").

Target does not need to compel additional information regarding Mr. LaPointe's prior and subsequent employers because it has directly examined Plaintiff on this topic. During his deposition, Mr. LaPointe testified to employment positions that he held since 1995, including positions held before, during, and after his employment with Target. LaPointe Depo. at 79:23-80:3; 83:14-84:7; 84:11-23; 96:1-97:1; 100-2-101:6 & Ex. C (LaPointe Resume). Plaintiff's counsel did not object to these questions. *Id.* Plaintiff also produced his resume in response to Target's First Request for Production of Documents, which discloses the names, dates, and descriptions of prior and subsequent employers. Ginsberg Decl. ¶ 4; Ex. C (LaPointe Resume).

Target does not cite to any authority showing why it is entitled to receive more extensive discovery than Plaintiff has already produced. None of Target's cited cases involve class claims, and all turn on information that Plaintiff has already produced. The court in *Kelly v. A1 Tech.* compelled an individual pro se plaintiff to answer deposition questions regarding, among other things, "the nature of his prior employment." No. 09 Civ. 962, 2010 WL 1541585, at *20 (S.D.N.Y. Apr. 12, 2010). Here, Plaintiff testified to the jobs he held since 1995. LaPointe Depo. at 79:23-80:3; 83:14-84:7; 84:11-23; 96:1-97:1; 100-2-101:6 & Depo. Ex. LaPointe-5 (resume). *Corrigan v. United States* cited to the individual plaintiff's resume when it considered

the probative value of his prior employment history. 68 Fed. Cl. 589, 595 (2005), *aff'd*, 223 F.

App'x 968 (Fed. Cir. 2007) ("Prior to his employment with NCUA, Mr. Corrigan had worked as

a financial consultant, an accountant, and a senior auditor with a public accounting firm. App. at

27–29 (Corrigan's resume)"). *Piscone v. Ernst & Young, L.L.P.* also analyzed an individual

plaintiff's resume and deposition testimony to determine whether he was properly classified.

171 F.3d 527, 537-38 (7th Cir. 1999) *overruled on other grounds by Hill v. Tangherlini*, 724

F.3d 965 (7th Cir. 2013). *Havey* is similarly inapposite, citing the number of years that the

individual plaintiffs worked in relevant positions before working for the defendant. *Havey v.

Homebound Mortg., Inc.*, No. 03 Civ. 313, 2005 WL 1719061, at *6 (D. Vt. July 21, 2005), *aff'd

sub nom. Havey v. Homebound Mortg., Inc.*, 547 F.3d 158 (2d Cir. 2008). Any similar

information is available through Mr. LaPointe's resume and deposition testimony. Finally,

*Goulet v. Mederi Caretenders VS of SW FL, LLC* is a minority view; the plurality of courts—

including in the Second Circuit—quash subpoenas served on past, current, and future employers

because the probative value of these records are outweighed by the potential for embarrassment

or other harm, including interfering with employment relationships. *Compare Goulet*, No. 10

Civ. 215, 2011 WL 652851, at *1 (M.D. Fla. Feb. 14, 2011) (denying motion to quash subpoena

of Plaintiff's current employment records), *with Vouona*, 2011 WL 5553709, at *8-9 (quashing

subpoena because the relevance of employment records was outweighed by the "potential for

harassment or reputational injury"); and *Henry v. Morgan's Hotel Grp., Inc.*, No. 15 Civ. 1789,

2016 WL 303114, at *2 (S.D.N.Y. Jan. 25, 2016) (granting motion to quash subpoenas to former

employers and finding that "if [the plaintiff] were to seek employment [with those employers] in

the future, his application to any of them…might well be adversely affected by the fact that his

records had been subpoenaed in this lawsuit"); and *Paananen v. Cellco P'ship*, No. 08 Civ. 1042,

2009 WL 2057048, at *3 (W.D. Wash. July 15, 2009) (denying motion to compel release of employment records from other employers where, sufficient for mitigation, plaintiff already informed defendant of all jobs he held since termination with defendant and the compensation information for each).

Whether Plaintiff and other Group Leaders were misclassified while working at Target turns on information within Target's possession. The additional information that Target moves to compel is unnecessary, irrelevant, and serves only to harass the named plaintiff in a class and collective action lawsuit for prosecuting the rights of the class.

## IV.    CONCLUSION

For all of the reasons stated herein, Plaintiff respectfully requests that Defendant's Motion to Compel Discovery be denied in its entirety.

Dated:       September 21, 2016            Respectfully Submitted,
             Roslyn, New York

By: _____

Louis Ginsberg, Esq.

**LAW FIRM OF LOUIS GINSBERG P.C.**
1613 Northern Boulevard
Roslyn, NY 11576
Telephone:  (516) 625-0105

**OUTTEN & GOLDEN LLP**
Jahan C. Sagafi (admitted *pro hac vice*)
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone:  (415) 638-8800

Melissa L. Stewart (admitted *pro hac vice*)
Cara B. Chomski (admitted *pro hac vice*)
685 Third Avenue, 25th Floor
New York, NY 10017

**GLEASON DUNN WALSH & O'SHEA**
Ron Dunn

15

40 Beaver Street
Albany, NY 12207
Telephone: (518) 432-7511